IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON GILL,<br><br>        Plaintiff,<br><br>    vs.<br><br>CHEVRONTEXACO CORPORATION, et al,<br><br>        Defendants.<br>_____/ | CASE NO. CV-F-05-0272 OWW LJO<br><br>**ORDER ON DEFENDANTS' MOTION TO LIMIT SCOPE OF DISCOVERY**<br>(Doc. 17.) |

**INTRODUCTION**

Defendants and counterclaimants ChevronTexaco Corporation and Texaco Inc. (collectively "ChevronTexaco") seek to limit discovery to the administrative record for plaintiffs Simon Gill ("Mr. Gill") and William Hatcher's ("Mr. Hatcher's") claims for benefits under the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. Mr. Gill and Mr. Hatcher seek to conduct discovery into what they characterize as ChevronTexaco's denial of fiduciary duty to honor ERISA benefits promised to Mr. Gill and Mr. Hatcher.

This Court considered ChevronTexaco's motion to limit discovery on the record and without the August 26, 2005 hearing or oral argument, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS ChevronTexaco's motion to limit discovery on Mr. Gill and Mr. Hatcher's ERISA causes of action to the administrative record.

# BACKGROUND

## Overseas Employment With ChevronTexaco

Mr. Gill and Mr. Hatcher were employed by Texaco Inc. ("Texaco") in October 2001 when Texaco merged with Chevron Corporation. Following the merger, ChevronTexaco employed Mr. Gill and Mr. Hatcher at its operation in Kazakhstan. Mr. Gill and Mr. Hatcher received an international service premium ("ISP") in addition to their base pay and other financial incentives. ChevronTexaco characterizes the ISP as "a financial incentive for living and working abroad" and recognition of "disadvantages of expatriation and differences among international locations."

Mr. Gill and Mr. Hatcher's employment was terminated effective October 9, 2003 after ChevronTexaco's sale of the Kazakhstan operation. Since Mr. Gill and Mr. Hatcher had many years of continuous service with Texaco prior to the merger, they were eligible for benefits under the "Separation Pay Plan of Texaco Inc." ("SPP"), which provides enhanced benefits for a "Change of Control," such as the merger. The SPP is an unfunded severance benefit plan to provide added financial security to Texaco employees with at least one year of continuous service in the event of an involuntary layoff or termination. Mr. Gill and Mr. Hatch received Change of Control benefits.

## The Separation Pay Plan

The SPP states "that the Change of Control Committee is the Plan Administrator for purposes of Change of Control benefits." The Change of Control Committee comprises former Texaco senior officers. As to administration, the SPP provides:

> The Plan Administrator is responsible for the administration of this plan and has final discretionary authority to interpret the plan's provisions, including questions of fact. . . . [I]n case of Change of Control benefits, the Plan Administrator is the <u>Change of Control Committee</u> as defined and explained under the <u>Change of Control</u> section.
>
> The decisions of the Plan Administrator with respect to all issues and questions will be final, conclusive and binding on all persons.
>
> The Plan Administrator may delegate to other persons the responsibilities for performing the ministerial duties in accordance with the terms of the plan and may rely on information, data, statistics or analysis provided by these persons. The company's determination will be conclusive regarding rates of pay, periods of absence with or without full- or part-pay, length and continuity of service, and termination of employment. (Underlining in original.)

The Change of Control Committee delegated initial review of claims for additional SPP benefits

to the Benefits Center Change of Control Claims Committee ("Claims Committee"), a separate body having no overlapping members with the Change of Control Committee. The SPP provides that if an employee disagrees "with a matter pertaining to [his/her] separation pay benefits," the employee may submit a written claim to the Claims Committee. If an employee's claim is denied, the employee may appeal in writing to the Change of Control Committee, which, according to the SPP, has "discretionary authority to make a final and conclusive determination of the claim."

## Mr. Gill And Mr. Hatcher's Claims

Mr. Gill and Mr. Hatcher claim to "have a similar story" and for brevity, focus on Mr. Gill's initial communications regarding Change of Control benefits. With his July 30, 2003 e-mail, Mr. Gill requested Dolores Matzat ("Ms. Matzat"), a ChevronTexaco human resources client manager, for an estimate of his Change of Control package and confirmation that he "would not be liable for any income tax on the package" in that he is not a United States citizen. Ms. Matzat responded with her July 31, 2003 e-mail to provide Mr. Gill a Change of Control "estimate."[1]

With his August 8, 2003 e-mail to Ms. Matzat, Mr. Gill noted: "I would like to find out for sure what the tax and social security handling of this package will be. Noting that I am not a US citizen and do no pay social security of tax." Ms. Matzat responded in her August 12, 2003 e-mail: "I have been told that your COC [Change of Control] gross payment would be your net payment - no taxes taken out."

With his November 7, 2003 e-mail, Mr. Gill notified ChevronTexaco that he had received his Change of Control payment but had not received a statement of its calculation and that the payment is more than $100,000 less than Ms. Matzat's estimate, presumably "because US theoretical tax was subtracted in error." In his November 10, 2003 e-mail, Mr. Gill further noted: "Prior to taking the package, I asked [Ms. Matzat], who was responsible for package administration and she confirmed in writing, that taxes would not be deducted from my package. My decision to take the package was made on this basis."

Mr. Gill and Mr. Hatcher submitted December 9, 2003 claims to the Change of Control Committee to assert "[i]n calculating the Bonus & Overtime Benefit portion of the Change of Control

---

[1] Mr. Gill does not indicate the estimate's amount.

Package, you mistakenly used my highest overtime over the last five years, rather than the expatriate premium." With its January 9, 2004 letters, the Claims Committee informed Mr. Gill and Mr. Hatcher that it "has determined that expatriate premiums do not qualify as bonus or overtime payments for purposes of calculating Change of Control Benefits."

With their March 8, 2004 letters, Mr. Gill and Mr. Hatcher appealed the Claims Committee's decisions to the Change of Control Committee to note "that the spirit and intention of the Change of Control provisions of the Texaco Separation Pay Plan, including the Benefits section, is to provide compensation based on the actual amount of compensation . . . historically and actually received. The foreign service premium was paid for the entire time . . . worked in Kazakhstan and was an integral part of [the] compensation package."

With its May 5 and 6, 2004 letters, the Change of Control Committee notified Mr. Gill and Mr. Hatcher that no adjustment "is warranted" for Mr. Gill and Mr. Hatcher's benefits and that it "concurs with the earlier decision by the Claims Committee that International Service Premiums do not qualify as bonus or overtime payments for purposes of calculating Change of Control Benefits. These International Service Premiums reflect and acknowledge the potential hardships and/or inconveniences of working in specific locations/countries and are discontinued when the recipient leaves those particular work locations." The Change of Control Committee further referenced the Frequently Asked Questions and Answers provided to SSP participants by Texaco's pre-merger management and noting that ISP payments are not included in Bonus & Overtime Benefit calculations:

> Q.   What bonuses are recognized for the Bonus & Overtime Benefit?
>
> A.   . . . There are some payments that are not recognized under the Bonus & Overtime Benefit. They include without limitation . . . International Service Premium . . .

### Consolidated Actions

On February 22, 2005, Mr. Gill and Mr. Hatcher filed their separate actions to allege each an ERISA cause of action that payments "received fell short of the representations of defendants, and the terms of the SPP under which plaintiff's ERISA benefits were to be computed." Mr. Gill alone pursues a declaratory relief (second) cause of action that ChevronTexaco wrongfully withheld money for taxes.

The district judge consolidated Mr. Gill and Mr. Hatcher's actions and referred to this Court

4

determination of the scope of discovery on Mr. Gill and Mr. Hatcher's ERISA causes of action. ChevonTexaco notes it has provided the administrative record to counsel for Mr. Gill and Mr. Hatcher.

## DISCUSSION

ChevronTexaco contends that discovery for Mr. Gill and Mr. Hatcher's ERISA causes of action is limited to the administrative record in that the standard of this Court's review is whether the Change of Control Committee, as SPP administrator, abused its discretion to deny Mr. Gill and Mr. Hatcher's Bonus & Overtime Benefit claims. ChevronTexaco argues that the abuse of discretion standard applies because the SPP expressly gave the Change of Control Committee discretionary authority to determine eligibility for Bonus & Overtime Benefits and to construe the SPP.

Mr. Gill and Mr. Hatcher contend that this is not a garden variety denial of benefits action, such as one addressing a change in disability status or disputed plan interpretation. Mr. Gill and Mr. Hatcher argue this is a "fraud" action where ChevronTexaco's departments, including the Change of Control Committee, "worked together to deprive these Plaintiffs of hundreds of thousands of dollars." Mr. Gill and Mr. Hatcher note that "the limited evidence already obtained now appears to justify the inclusion of a formal 'breach of fiduciary duty' cause of action under 29 U.S.C. § 1104."

### F.R.Civ.P. 26(b) Scope Of Discovery

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent possible," *United States v. Procter & Gamble*, 356 U.S. 677, 683, 78 S.Ct. 983, 987 (1958), and to narrow and clarify the issues in dispute, *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947).

Mr. Gill and Mr. Hatcher point to F.R.Civ.P. 26(b)'s broad scope of discovery applied in most civil actions:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine*

*Ltd.*, 179 F.R.D 281, 283 (C.D. Cal. 1998); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D. N.J. 1990). ChevronTexaco correctly points out that the "scope of permissible discovery on challenges to administrative denials of benefits under ERISA is considerably more limited due to the deference afforded to plan administrators' determinations" and is not as broad as F.R.Civ.P. 26(b)'s scope.

### ERISA Scope Of Discovery

Under ERISA, a plan participant, beneficiary or fiduciary may bring a civil action. 29 U.S.C. § 1132(a). Under 29 U.S.C. § 1132(a)(1)(B), a plaintiff may seek to "recover benefits due him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "A primary goal of ERISA [is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 (9th Cir. 1993) (quoting *Sandoval v. Aetna Life & Casualty Co.*, 967 F.2d 377, 380 (10th Cir. 1992)).

The scope of discovery in denial of an ERISA benefits case is linked to the standard of review. *Medford v. Metropolitan Life Ins. Co.*, 244 F.Supp.2d 1120, 1126 (D. Nev. 2003). De novo is the default standard of review in denial of ERISA benefits cases. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-957 (1989); *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 976 (9th Cir. 1999); *Medford*, 244 F.Supp. at 1126. When reviewing de novo a plan administrator's benefits denial, a court has discretion to consider evidence outside the record. *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 943-944 (9th Cir. 1995).

The more deferential abuse of discretion standard is applied to a benefits denial when the plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954; *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990); *Medford* 244 F.Supp.2d at 1126. When reviewing for abuse of discretion a plan administrator's benefits denial, a court is strictly limited to the evidence in the record. *Taft*, 9 F.3d at 1472. The abuse of discretion standard "permits the district court to 'review only the evidence presented to the plan trustees.'" *McKenzie v. General Telephone Co. of California*, 41 F.3d 1310, 1316 (9th Cir. 1994) (quoting *Jones v. Laborers Health & Welfare Trust Fund*,

906 F.2d 480, 482 (9th Cir. 1990)), *cert. denied*, 514 U.S. 1066, 115 S.Ct. 1697 (1995); *see Taft*, 9 F.3d at 1472 ("Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it.")

This Court's attention turns to the discretion granted by the SPP to the Change of Control Committee as plan administrator.

## **Standard Of Review – Discretionary Powers**

In *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir.), *cert. denied,* 120 S.Ct. 398 (1999), the Ninth Circuit Court of Appeals, in its majority opinion, clarified its interpretation of *Firestone*:

> "[D]enial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115.  That means the default is that the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision.

The Ninth Circuit has further explained:

> When an ERISA plan administrator cannot exercise discretionary power because the plan confers none, the more deferential standard of review is inappropriate. . . . [A]bsent a grant of discretionary authority in the plan, the district court's *de novo* review of factual determinations by plan administrators is consistent with *Firestone* and its emphasis on the goals of ERISA: to protect the interests of the plan members and their beneficiaries."

*Walker v. American Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1070 (9th Cir. 1999) (quoting *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1183-1184 (3rd Cir. 1991)).

More particularly, the Ninth Circuit has held: "Language that establishes only an entity's right to administer or manage a plan does not confer discretion." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1325 (9th Cir. 1992) (citing *Firestone*, 489 U.S. at 111, 109 S.Ct. at 954); *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 952 (9th Cir. 1989); *International Bhd. of Elec. Workers Local 47 v. Southern Cal. Edison Co.*, 880 F.2d 104, 108 (9th Cir. 1989).  However, a plan "unambiguously confers discretion on the administrator" when it empowers the administrator "to construe and interpret the terms of the Plan and the authority and responsibility to make factual determinations." *Jordan v. Northrop Grumman Welfare*

*Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2004); *see Bendixen v. Standard Insurance Co.*, 185 F.3d 939, 943, n. 1 (9th Cir. 1999) (abuse of discretion standard applied where policy granted plan administrator "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.")

Here, the SPP grants the Change of Control Committee, as plan administrator for Change of Control benefits, responsibility "for the administration of this plan" and "final discretionary authority to interpret the plan's provisions, including questions of fact." After initial claims review by the Claims Committee, the SSP grants the Change of Control Committee "discretionary authority to make a final and conclusive determination of the claim." The SPP further provides that the Plan Administrator's decisions "with respect to all issues and questions will be final, conclusive and binding on all persons."

The SPP grants the Change of Control Committee more than a mere right to administer or manage the SPP. The SPP grants the Change of Control Committee discretion to interpret the SPP and to determine factual questions. The SPP further grants the Change of Control Committee discretion to review and conclusively decide claims. The SPP unambiguously confers the Change of Control Committee discretion to invoke the abuse of discretion standard to address Mr. Gill and Mr. Hatcher's ERISA claims, and the standard is not dependent on a particular type of ERISA claim.

Moreover, "[p]ermitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of [ERISA's] goal" to resolve disputes inexpensively and expeditiously. *Taft*, 9 F.3d at 1472. "In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination." *Mongeluzo*, 46 F.3d at 944 (quoting *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (4th Cir. 1993) (en banc)). The Ninth Circuit emphasizes that "a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Mongeluzo*, 46 F.3d at 944; *see Alford v. DCH Group Long Term Disability Plan*, 311 F.3d 955, 959 (9th Cir. 2002) (evidence "neither 'presented to' nor 'considered by'" the plan administrator "in reaching its decision . . . should not be included in the record on appeal to the district

court." When a court reviews a plan administrator's decision, either de novo or for an abuse of discretion, "the record that was before the administrator furnishes the primary basis for review." *Kearney*, 175 F.3d at 1090.

### Conflict Of Interest

Mr. Gill and Mr. Hatcher argue, without citation to pertinent authority, "that where, as here, a conflict of interest exists between the employer and so-called independent 'plan administrator,' the latter's acts are presumptively void." Mr. Gill and Mr. Hatcher argue that there is an "active, actual, and continuing" conflict of interest in that the Change of Control Committee had "discretionary authority" but "was also part and parcel of the employer," not a separate entity. ChevronTexaco responds with support that the Change of Control Committee "is an independent body constituted to administer the SPP" and argues that there is no evidence that its "decisions were tainted by a conflict of interest."

The U.S. Supreme Court has held that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict of interest must be weighted as 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115, 109 S.Ct. at 957. In the Ninth Circuit, if an insurer has a conflict of interest arising from dual roles as administrator and funding source for the plan, judicial review is for abuse of discretion but is "less deferential." *Regula v. Delta Family-Care Disability Survivorship Plan*, 266 F.3d 1130, 1145 (9th Cir. 2001), *abrogated on other grounds*, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *Medford*, 244 F.Supp.2d 1126; *see Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1323 (9th Cir. 1995) ("[T]he simple fact that employees of [a funding employer] made the decision to deny benefits is not enough to establish a breach of fiduciary duty."). A court must examine whether an "apparent" conflict of interest exists because of a plan administrator's economic stake in the decision to award benefits. *Medford*, 244 F.Supp.2d at 1126-1127. A court must make an "intermediate inquiry" to determine whether the conflict of interest "affected" the decision. *Regula*, 266 F.3d at 1145; *Medford*, 244 F.Supp.2d at 1127. If the inquiry leads to the conclusion that the conflict of interest affected the administrator's decision, an "actual" conflict is said to exist and the decision is reviewed de novo. *Tremain*, 196 F.3d at 975; *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1109 (9th Cir. 1999); *Medford*, 244 F.Supp.2d at 1127.

Mr. Gill and Mr. Hatcher "concede that they have found no Ninth Circuit or district court opinion which is 'on all fours' with this case."[2] To support their arguments, Mr. Gill and Mr. Hatcher cite to *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984), *cert. denied*, 474 U.S. 865 (1985), which was decided several years prior to the United States Supreme Court's *Firestone* decision. *Firestone* "substantially change[d] the former standard of review for benefit determinations and thus establishes a new rule of law." *Orozco v. United Air Lines, Inc.*, 887 F.2d 949, 953 (9th Cir. 1989). In addition, subsequent Ninth Circuit decisions recognized *Blau*'s ruling as abrogated. *See Thomas v. Oregon Fruit Products Co.*, 228 F.3d 991, 994 (9th Cir. 2000); *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 894, n. 1 (9th Cir. 1990). Mr. Gill and Mr. Hatcher offer no legal authority to challenge that discussed above.

In considering whether a conflict of interest affected the administrator's decision-making, a court applies a burden-shifting scheme. *Regula*, 266 F.3d at 1145; *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1108 (9th Cir. 2000); *Friedlich*, 181 F.3d at 1109. The plan beneficiary must provide "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary." *Atwood*, 45 F.3d at 1323. Production of such evidence creates a rebuttable presumption that the administrator's decision to deny benefits was a dereliction of its fiduciary responsibilities. *Regula*, 266 F.3d at 1145; *Medford*, 244 F.Supp.2d at 1127. The burden shifts to the plan administrator to produce evidence that the conflict of interest did not affect the decision to deny benefits. *Lang v. Long-Term Disability Plan*, 125 F.3d 794, 798 (9th Cir. 1997); *Medford*, 244 F.Supp.2d at 1127; *see Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556, 1567 (9th Cir. 1990) (the plan administrator's "reasons need not be compelling, only sufficient to take them out of the arbitrary mold."), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712 (1991). If the administrator fails to carry such burden, a court must review the benefits decision de novo, not for an abuse of discretion. *Regula*, 266 F.3d at 1145; *Tremain*, 196 F.3d at 976; *Medford*, 244 F.Supp.2d at 1127.

Mr. Gill and Mr. Hatcher offer nothing more than claims of a conflict of interest. They point out

---

[2] This Court appreciates and applauds Mr. Gill and Mr. Hatcher's willingness to make such concession and their candor.

that "discovery is expected to show" that ChevronTexaco staff members were "fiduciaries." Mr. Gill and Mr. Hatcher note that ChevronTexaco withheld monies purportedly paid for taxes. Such payment by ChevronTexaco does not arise to a conflict of interest in that ChevronTexaco is obliged to withhold monies and pay them to taxing authorities and doing so does not promote its self-interest. ChevronTexaco points to documents that ISP are not recognized an a bonus and overtime benefit. Mr. Gill and Mr. Hatcher do not meaningfully challenge ChevronTexaco's declarations that the Change of Control Committee is "independent" of ChevronTexaco and "is not influenced" by ChevronTexaco. Mr. Gill and Mr. Hatcher fail to meet their burden of raising of conflict of interest issue.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court GRANTS ChevronTexaco's motion to limit discovery on Mr. Gill and Mr. Hatcher's ERISA causes of action to the administrative record.[3]

IT IS SO ORDERED.

**Dated:   August 15, 2005**          /s/ Lawrence J. O'Neill
66h44d                                 UNITED STATES MAGISTRATE JUDGE

---

[3] This order does not address the scope of discovery for Mr. Gill's second cause of action for declaratory relief.